ROBERT WYLLIE and Another, Appellants, v. JAMES PALMER, Jr., and Another, Respondents.

*Negligence — master and servant — the master is not liable where a servant is acting for the time being under the orders of another.*

A citizens' committee contracted with a firm in another city, manufacturers of fire-works, for a display thereof. The firm sent printed instructions as to the manner in which the display should be fired, and also furnished an expert, to set up the fixed pieces, who was accompanied by a boy. While the expert and the chairman of the committee, who undertook the management of the affair, were fixing the frames of some set pieces the chairman told another member of the committee to take the boy and fire off some rockets.

In firing a rocket the boy negligently injured a bystander. In an action brought to recover the damages resulting from such injury no evidence was given upon the trial to show that the boy was sent by the firm for any other purpose than to assist the expert in arranging the fixed pieces.

*Held,* that in firing the rocket the boy was the servant of the committee, and not of the manufacturers, and that the latter were not responsible for the consequences of his negligent act.

APPEAL by the plaintiffs, Robert Wyllie and Jane, his wife, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Cayuga on the 17th day of February, 1891, dismissing the complaint, with costs, after a trial at the Cayuga Circuit before the court and a jury; also an appeal from an order denying a motion for a new trial.

*James R. Cox,* for the appellants.

*Nathaniel Foote,* for the respondents.

LEWIS, J.:

The citizens of Auburn, wishing to have an exhibition of fire-works on the 4th of July, 1888, at a public meeting held in that city, appointed a committee, consisting of George H. Battams, J. H. Pearson and others, to take charge of the preparations for and management of the exhibition.

Battams was chairman of the committee and entered into negotiations for the fire-works by correspondence with the defendants, who resided in the city of Rochester, and were manufacturers of fire-works, and on May 1st, 1888, wrote defendants for a catalogue of their goods.

Defendants answered under date of May twenty-second: "We inclose programme of exhibition. * * * We also inclose printed sheet giving full instructions for firing the display."

Under date of June twelfth Mr. Battams writes: "We have decided to have a four-hundred-dollar display. Will you please inform me what you will give in that. * * * Please give us a fine display. We would like to have a man to take charge of the display."

Defendants wrote under date of June fourteenth: "We understand that we have your positive order for display to cost four hundred dollars net, including expense of man, and we inclose you programme representing the goods we will send. * * * We will put our very best work in it, and know you will be pleased."

The defendants shipped the fire-works to the committee by rail. The committee received them and paid the freight thereon from Rochester; and on the third day of July the defendants sent to Auburn their employee, Mr. Royce, an expert in fire-works. They also sent with him a boy nineteen years old, by the name of Kemitz, who was in their employ. When the time for exhibiting the fire-works arrived, on the evening of July fourth, the committee, of which Mr. Battams was chairman, assumed control of the general management of the exhibition.

Battams and Royce, at the place selected by Battams, arranged that part of the fire-works known as the fixed pieces. It was arranged that the rockets should be fired at a place away from the fixed pieces. Kemitz was with Battams and Royce assisting in putting up the frames of the set pieces; and while they were thus engaged, and after they had fired some of the set pieces, Mr. Pearson, one of the committee, came to where they were and inquired of Mr. Battams if he should not go to work and fire some of the rockets. Battams replied "Yes, take the young man Kemitz and you and he can fire off the rockets," and they went to the rockets and commenced firing them. Pearson testified: "I got the order from the chairman of the committee to go and fire them, and I suppose I was in charge of them." He testified that he considered that he was in charge of it, and that Kemitz did as he directed. Kemitz while firing the rockets negligently and carelessly exploded a

rocket which was lying upon the ground and had not been prepared to be then exploded. The rocket flew along horizontally and struck the plaintiff who was standing in the street witnessing the exhibition, breaking and burning her arm. The sole question presented by this appeal is, was Kemitz, while firing the rockets, the servant of the committee or of the defendants.

There is no evidence in the case that the defendants sent Kemitz to take charge of or assist in the explosion of the rockets, or that they expected that he would be employed at that work; while Kemitz testified that he had theretofore had some experience in firing rockets, there was no evidence that the defendants considered him competent to do such work. He was sent there for one purpose, and one only — to assist Royce in arranging the fixed pieces. Battams, as chairman of the committee, assumed to direct Kemitz to assist Pearson in firing the rockets. Royce gave him no directions about firing them. While Royce was sent as an expert to look after the mechanical part of the work, the committee assumed the general management and direction of the exhibition. The defendants had sold and shipped the fire-works as requested, and, pursuant to the request of the committee, had sent Mr. Royce to take charge of the display.

When Battams assumed to direct the boy to fire the rockets, a kind of work the defendants had not sent him to do, it must be held, we think, that the boy was not, when thus engaged, the servant of the defendants.

To hold the defendants liable for the acts of the boy when he was under the direction of the committee, and was doing work which the defendants had not directed him to do, would be doing violence to the rule of law which is well stated in Shearman & Redfield on Negligence (§ 73 [2d ed.]; § 160 [4th ed.]), as follows: "He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents; not merely in the ultimate result of his work, but in all its details."

Servants, who are employed and paid by one person, may nevertheless be, *ad hoc,* the servants of another in a particular transaction, and that, too, where their general employer is interested in the work.

They may, without consulting their master, but in good faith, assist a person independently employed to do something which shall

benefit their master, but with which neither he nor they have any right to interfere, and in which they act entirely under the control of such other persons.

In none of these cases is the nominal master responsible to strangers for their acts or omissions. The trial court, we think, correctly held that the defendants were not responsible for the negligence of Kemitz in handling the rockets.

The judgment and order appealed from should be affirmed.

Dwight, P. J., and Macomber, J., concurred.

Judgment and order appealed from affirmed.

63    11
139a 323

